J-A11024-16

2016 PA Super 138

| | |
|---|---|
| ZACHARY NEIDERT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ALBERT CHARLIE, III | |
| Appellee | No. 1903 EDA 2015 |

Appeal from the Order Entered June 11, 2015
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2014-C-2423

| | |
|---|---|
| ZACHARY NEIDERT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ALBERT CHARLIE, III | |
| Appellee | No. 2841 EDA 2015 |

Appeal from the Judgment Entered November 13, 2015
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2014-C-2423

BEFORE:  SHOGAN, J., MUNDY, J., and FITZGERALD, J.[*]

OPINION BY MUNDY, J.:                    **FILED JUNE 29, 2016**

Appellant, Zachary Neidert, appeals from the June 11, 2015 order

granting the motion for compulsory non-suit made by Appellee, Albert

_____

[*] Former Justice specially assigned to the Superior Court.

Charlie, III, and the subsequent November 13, 2015 judgment entered in Appellee's favor. After careful review, we dismiss the appeal at 1903 EDA 2015 and affirm the judgment in the appeal at 2841 EDA 2015.

The trial court summarized the relevant factual history of this case as follows.

> On August 21, 2012, while working as an employee of Riley's Pub, located at 4505 Main Street, Egypt, Lehigh County, Pennsylvania, [Appellant] was injured from using a "door in the floor" of the building owned by [Appellee], who was also [Appellant]'s boss and is the sole owner of the stock in the business entity, Brooke Derek, Inc., which is the business that operates Riley's Pub.
>
> [Appellant] pursued his case for damages against [Appellee] under the theory that [Appellee] is not entitled to the immunity traditionally granted to co-employees by the Workers' Compensation Act because he stood in a dual capacity with respect to the building and business operation and that, as the building's owner, he owed a separate duty to [Appellant] with respect to building conditions and safety. The parties do not dispute that [Appellant] was acting in the course and scope of his employment at the time of the incident or that [Appellant] applied for and received worker's compensation benefits, including a settlement payment from Brooke Derek, Inc.

Trial Court Opinion, 9/10/15, at 2.

On July 25, 2014, Appellant filed a complaint, alleging negligence on the part of Appellee when Appellant was injured as a result of a bar patron falling through a trap door when Appellant was using it. Appellant's Complaint, 7/25/14, at ¶¶ 8-11. Appellee filed an answer with new matter

- 2 -

on September 17, 2014, to which Appellant filed his response on October 8, 2014. Appellee filed a motion for summary judgment on March 17, 2015, which the trial court denied on April 30, 2015. The case proceeded to trial June 9, 2015. On June 11, 2015, Appellee made an oral motion for a compulsory nonsuit, which the trial court granted. N.T., 6/9/15, at 223, 242.[1] Appellant filed a timely post-trial motion on June 22, 2015 to remove the nonsuit, as well as for a new trial.[2] Appellant filed a supplemental post-trial motion on June 23, 2015. On June 26, 2015, Appellant filed a notice of appeal, which was docketed in this Court at 1903 EDA 2015. On July 20, 2015, Appellee filed an application to quash Appellant's appeal, as the trial court had not yet resolved his post-trial motions.

Meanwhile, on September 10, 2015, the trial court denied Appellant's post-trial motions. On September 17, 2015, Appellant filed a second notice of appeal, which was docketed in this Court at 2841 EDA 2015. On November 10, 2015, this Court entered an order directing Appellant to praecipe the trial court prothonotary to enter judgment within 10 days.

---

[1] There is only one transcript for the trial in the certified record. Therefore, for convenience, we label the notes of testimony as "6/9/15" even though the transcript spans from June 9 through June 11, 2015.

[2] We observe that the tenth day fell on Sunday, June 21, 2015. When computing a filing period, "[if] the last day of any such period shall fall on Saturday or Sunday … such day shall be omitted from the computation." 1 Pa.C.S.A. § 1908. Therefore, the tenth day for Appellant to file a timely post-trial motion was on Monday, June 22, 2015. As a result, we deem his post-trial motion timely filed.

Appellant timely complied with our order on November 13, 2015. Thereafter, on December 28, 2015, in light of Appellant's compliance, this Court entered another order denying Appellee's application to quash, and ordered the two appeals consolidated.[3] **See generally** Superior Court Order, 12/28/15 at 1; Pa.R.A.P. 513.

On appeal, Appellant raises the following two issues for our review.

> A. Whether the trial court committed an abuse of discretion and/or error of law in failing to provide Appellant with the benefit of all favorable testimony and every reasonable inference of fact regarding the establishment of an independent cause of action against [Appellee], as a landlord, separate and apart from any duty Appellee may have had as an employee of Brooke Derek, Inc.?

> B. Did the [trial] court commit an abuse of discretion and/or error of law in failing to follow the "law of the case", in which the [trial] court, albeit a different judge, had already ruled that the very same evidence as was presented at trial, created an issue for the jury to decide?

Appellant's Brief at 3.

We begin by noting our well-settled standard of review.

---

[3] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. We further note that Appellant's appeal properly lies from the entry of judgment. **See Billig v. Skvarla**, 853 A.2d 1042, 1048 (Pa. Super. 2004) (stating, "in a case where nonsuit was entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit[]"). Therefore, as Appellant's appeal at 1903 EDA 2015 was premature and duplicative of his appeal at 2841 EDA 2015, we dismiss the appeal at 1903 EDA 2015.

> An order denying a motion to remove a compulsory nonsuit will be reversed on appeal only for an abuse of discretion or error of law. A trial court's entry of compulsory nonsuit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial court to make a determination prior to submission of the case to a jury. In making this determination the plaintiff must be given the benefit of every fact and all reasonable inferences arising from the evidence and all conflicts in evidence must be resolved in plaintiff's favor.
>
> **Alfonsi v. Huntington Hosp., Inc.**, 798 A.2d 216, 218 (Pa. Super. 2002). "Additionally, a compulsory nonsuit is valid only in a clear case where the facts and circumstances lead to one conclusion—the absence of liability." **Harvilla v. Delcamp**, 555 A.2d 763, 764 (Pa. 1989).

**Allen-Myland, Inc. v. Garmin Int'l, Inc.**, --- A.3d ---, 2016 WL 3068393, at *11 (Pa. Super. 2016) (parallel citations omitted).

In his first issue, Appellant argues that the trial court erred when it granted Appellee's motion for a compulsory nonsuit on the theory that he could not establish a cause of action under the dual capacity doctrine. The Workers Compensation Act generally bars all common law suits against an employer, because the Act is the exclusive remedy for injuries sustained when an individual is acting within the scope of his employment. **Soto v. Nabisco, Inc.**, 32 A.3d 787, 790 (Pa. Super. 2011) (citation omitted), *appeal denied*, 50 A.3d 126 (Pa. 2012); **see also generally** 77 P.S. § 481(a).

However, Pennsylvania courts have recognized a "dual capacity" exception to this bar, which this Court has described in the following terms.

The "dual capacity" doctrine provides:

> Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as an employer.

**Callender v. Goodyear Tire and Rubber Co.,** 564 A.2d 180, 185 (Pa. Super. 1989) (quoting 2A Larson, *Workmen's Compensation Law,* § 72.80, at 14–112 (1976)). Generally, "the Pennsylvania Superior Court has taken an unfavorable view of the dual capacity doctrine." **Van Doren v. Coe Press Equipment Corp.,** 592 F.Supp.2d 776, 799 (E.D. Pa. 2008) (citing **Heimbach v. Heimbach**, 584 A.2d 1008 (Pa. Super. 1991); **Callender**, *supra*).

The Pennsylvania Supreme Court has applied the "dual capacity" doctrine in only one case. **Tatrai v. Presbyterian University Hospital**, 439 A.2d 1162 (Pa. 1982). That case involved a hospital employee who became ill while at work. Because there was no doctor on duty at Employee Health Services, the employee's supervisor instructed the employee to go to the general emergency room of the hospital for medical care. While on the x-ray table in the hospital emergency room, the employee was injured after the foot stand broke loose; and she fell to the floor. The Supreme Court reasoned that the employee, at the time of her injury in the general hospital emergency room, was in the same position as any other member of the public receiving medical treatment because the emergency room was open to the general public. Therefore, the Court held that the hospital owed the employee the same duty it owed the general members of the public who came to the hospital emergency room for medical care.

Thus, the hospital was not immune under the WCA from suit for the injuries the employee sustained in the general hospital emergency room, where the hospital held itself out to the public as a health care provider; the Court said:

> There is no reason to distinguish [the employee] from any other member of the public injured during the course of treatment. The risk of injury which [the employee] suffered was a risk to which any member of the general public receiving like treatment would have been subjected. The occurrence of the injury was not made more likely by the fact of her employment.

> *Id.* at 1166.

*Soto*, *supra* at 791-792 (parallel citations omitted).

In this case, the trial court concluded that Appellant could not meet the dual capacity exception based on the following rationale.

> At the trial in the case at hand, [Appellant] simply failed to introduce enough evidence to prove that his claim fell within the narrow confines of the dual capacity exception to immunity. [Appellant]'s response to this issue was to focus only on the fact that [Appellee] owned the building. The fallacy in this position is that it is nearly impossible to separate [Appellee]'s involvement as co-employee/boss of [Appellant] from his role as building owner. The facts offered in [Appellant]'s case in-chief illustrate this impossibility.

> [Appellee] was the only shareholder of Brooke Derek, Inc., the only officer, and the only person who would act for the company. Indeed, [Appellant] described [Appellee] as the one that would get things done around the bar. Those things included signing checks, setting prices, buying new equipment and completing repairs when necessary. [Appellee] did all of these things [and] was the one that owned

the building. Moreover, [Appellee] hired [Appellant] to work at Riley's. [Appellant] was introduced to the "door in the floor" by [Appellee] while both were at work. Finally, [Appellee] developed safety instructions and a procedure for how to access the basement through the door in the floor that all of the employees were supposed to follow. [Appellant] was instructed on these procedures. In summary, [Appellee] was in ultimate, overall control of the bar operation and the building at the same time.

The evidence presented during [Appellant]'s case in[-]chief was not simply that the door was dangerous but also that the nature of [Appellee]'s business operations or decisions he made as the proprietor of the business were a substantial contributing factor. For example, [Appellant] claimed that [Appellee] failed to open an alternative other path that existed on the first floor of the building, that his instructions to employees to block the public side of the door with barstools were inadequate and that the business contained distracting visual materials, like a television, popcorn machine, and advertisements which tend to divert attention from the door in the floor.

Each of these arguments implicates things [Appellee] did or did not do as a business proprietor, not as [an] owner of the building or the landlord and the law is crystal clear that [Appellee] is immune from suit for such claims. It was impossible to ask the jury to consider the liability of [Appellee] as building owner based upon alleged architectural shortcomings of the door, but at the same time expect the jury to ignore theories of negligence that [Appellant] introduced, but for which [Appellee] is immune. Practically speaking, recognition of [Appellant]'s case would automatically expose [Appellee] to both workers' compensation claims and liability suits every time there is an employee injury-incident arising from any condition on the premises.

Trial Court Opinion, 9/10/15, at 6-7 (some internal quotations marks and citations omitted).

After careful review of the certified record, we conclude Appellant is not entitled to relief. As the trial court points out, it was not contested at trial that Appellee was the only corporate officer. N.T., 6/9/15, at 184. Appellant testified that he was hired to work at Riley's Pub by Appellee and that Appellee "was the person who would get things done around the bar" and "was ultimately in control of things" at the Pub. ***Id.*** at 106, 107. Appellant also admitted that while in his capacity of managing the Pub, Appellee showed Appellant the trap door around the time he began working at the Pub. ***Id.*** at 109. Appellee also provided Appellant safety instructions regarding the trap door. ***Id.*** at 183. Appellant acknowledged receiving these instructions. ***Id.*** at 109-110.

Our Supreme Court has explained that the dual capacity exception is a narrow one.

> [I]t is this clear that the focus of the "dual capacity" exception is on the circumstances in which the worker's injury occurs. *But no such exception can exist where, as in the matters now before us, the employee's compensable injury occurred while he was actually engaged in the performance of his job*.

***Heath v. Church's Fried Chicken, Inc.***, 546 A.2d 1120, 1121 (Pa. 1988) (emphasis in original), *quoting* ***Lewis v. Sch. Dist. of Phila.***, 538 A.2d 862,

869 (Pa. 1988).[4]  As noted above, in **Tatrai**, our Supreme Court held the dual capacity exception applied because, "the [hospital] employee, at the time of her injury in the general hospital emergency room, was in the same position as any other member of the public receiving medical treatment because the emergency room was open to the general public."  **Tatrai**, **supra** at 1165.  Our Supreme Court noted that the plaintiff's injury was "an event totally extraneous to the employment scheme."  **Id.**  Here, there is no dispute that Appellant's injury occurred while he was engaged in the performance of his job, which is not "extraneous to the employment scheme."  **Id.**  Based on these considerations, we conclude the trial court did not abuse its discretion when it granted Appellee's motion for a compulsory nonsuit.  **See Allen-Myland, Inc.**, **supra**.

In his second issue, Appellant avers that the trial court incorrectly applied the law of the case doctrine.  Appellant's Brief at 25.  Specifically, Appellant argues that once the trial court denied Appellee's motion for summary judgment on the dual capacity issue, a different judge of the same

---

[4] We reject Appellant's reliance on **Fern v. Ussler**, 630 A.2d 896 (Pa. Super. 1993), *appeal granted*, 652 A.2d 1326 (Pa. 1994).  **Fern** was a three-judge panel decision of this Court in which one judge concurred in the result only, and the third judge filed a dissenting opinion.  As such, **Fern** has no precedential value.  Although, our Supreme Court purportedly granted *allocatur* on December 13, 1994, we have not uncovered any decision from our Supreme Court in that case.

trial court was barred from granting Appellee's motion for a compulsory nonsuit on the same grounds. *Id.* at 26.

This Court has previously explained the law of the case doctrine as follows.

> The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter…. The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy … but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.
>
> *Commonwealth v. McCandless*, 880 A.2d 1262, 1267 (Pa. Super. 2005), *appeal dismissed as improvidently granted,* 933 A.2d 650 ([Pa.] 2007) (quoting *Commonwealth v. Starr*, 664 A.2d 1326, 1331 ([Pa.] 1995)). Thus, under the doctrine of the law of the case,
>
> > when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the case, reverse its previous ruling even though convinced it was erroneous. This rule has been adopted and frequently applied in our own State. It is not, however, inflexible. It does not have the finality of the doctrine of *res judicata.*

> "The prior ruling may have been followed as the law of the case but there is a difference between such adherence and *res judicata;* one directs discretion, and the other supercedes [sic] it and compels judgment. In other words, in one it is a question of power, in the other of submission." The rule of the "law of the case" is one largely of convenience and public policy, both of which are served by stability in judicial decisions, and it must be accommodated to the needs of justice by the discriminating exercise of judicial power.
>
> [***Id.***] at 1268 … (quoting ***Benson v. Benson***, 624 A.2d 644, 647 ([Pa. Super.] 1993)).

> ***Commonwealth v. Gacobano***, 65 A.3d 416, 419-420 (Pa. Super. 2013) (parallel citations omitted).

***Commonwealth v. Schultz***, 116 A.3d 1116, 1122-1123 (Pa. Super. 2015).

In this case, the trial court considered the dual capacity issue in the context of a motion for summary judgment, denied the same, and then considered the issue anew in Appellee's motion for a compulsory nonsuit. This Court has held that the law of the case doctrine does not apply in certain procedural postures.

> Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

- 12 -

*Parker v. Freilich*, 803 A.2d 738, 745 (Pa. Super. 2002) (citation omitted), *appeal denied*, 820 A.2d 162 (Pa. 2003). In *Parker*, this Court held that a trial court is permitted to consider an issue in a motion for compulsory nonsuit that had been previously addressed in denying a motion for summary judgment. *Id.* We explained that a motion for summary judgment and a motion for a compulsory nonsuit "are not motions of the same kind[.]" *Id.* This is because the plaintiff's "presentation of her case in chief constitutes an intervening change in the facts that warranted a second consideration of the issue[.]" *Id.* at 746. Therefore, as Appellant's argument is foreclosed by *Parker*, we conclude the trial court did not violate the law of the case doctrine in considering and granting Appellee's motion for a compulsory nonsuit. *See Schultz*, *supra*.

Based on the foregoing, we conclude both of Appellant's issues on appeal are devoid of merit. Accordingly, the trial court's June 11, 2015 order and its subsequent November 13, 2015 judgment are affirmed.

Appeal at 1903 EDA 2015 dismissed. Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2016

- 13 -